KELVIN WALKER, BY HIS NEXT FRIEND AND FATHER,
JOHN WALKER, APPELLANT, V. LARRY E. BRADLEY ET
AL., APPELLEES.

320 N.W.2d 900

Filed June 18, 1982. No. 44055.

Craig F. Swoboda and George O. Rebensdorf of Swoboda & Katz, for appellant.

William H. Grant and Albert, Leininger & Grant, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

This is an action by a 13-year-old plaintiff, acting by his father and next friend, seeking to enjoin certain officials of the school district of the city of Columbus, Nebraska, from enforcing a 3-day suspension of the plaintiff student from Columbus Junior High School for violation of school rules against fighting. After trial, the District Court denied plaintiff's application for a permanent injunction and dissolved a pretrial temporary restraining order. The plaintiff has appealed, alleging that he was not afforded due process of law.

The plaintiff, Kelvin Walker, was a 13-year-old student in Columbus Junior High School in Columbus, Nebraska, at the time of the events involved here. Kelvin was involved in four separate fights at school during the fall of 1980. The evidence as to

each fight varies and is in some conflict, but the details of each incident are not significant for purposes of this appeal.

The first fight occurred September 9, 1980. No disciplinary action was taken against Kelvin but another boy who was involved was suspended. The principal of the junior high school requested a conference with Kelvin's parents concerning this fight but they refused to meet with him.

The second fight occurred on November 3, 1980, and did not result in any direct or immediate disciplinary action except a verbal warning to both participants.

The third fight occurred on November 5, 1980. An assistant principal interviewed the plaintiff and the other boy involved and took statements from both of them later on November 5. On the morning of November 6, the assistant principal called the mothers of both boys to arrange a conference later in the day with them and the boys to discuss the November 5 incident. He was unable to arrange a conference with the other boy's parents until the following day, November 7.

On November 6, 1980, Kelvin and his brother were involved in a fourth fight with some other boys. Approximately 2 hours before that fight, another assistant principal had met with Kelvin and told him that the school did not condone fighting and encouraged him to report any problems immediately to the office rather than to become involved in another fight.

After the fourth fight both assistant principals met with Kelvin, his mother and brother, and the parents of another boy who was also involved in the November 6 fight. At that meeting both the November 5 and November 6 fights were discussed. The students reported their versions and the assistant principal in charge of the discussion reduced those statements to writing. Since one boy involved in the No-

vember 6 incident was absent, disciplinary measures for the November 6 fight were postponed. The assistant principal read the handbook of rules for the Columbus Junior High School, which expressly prohibits "verbal or physical fights in school buildings" and "hitting, striking, kicking or in any other way harming another student . . . ." The plaintiff and his parents were all aware of the rule against fighting.

The assistant principal indicated that he intended to suspend both the plaintiff and the other boy involved in the November 5 fight. He also informed the plaintiff's mother that she had a right to discuss his decision with the principal. Plaintiff's parents decided to appeal.

On November 12, 1980, the principal met with the plaintiff and his parents. All four altercations were discussed and full information concerning each one was presented to Kelvin and his parents by various school officials. The evidence included written statements from teachers and students, the plaintiff's statement regarding the November 5 fight, and several memoranda from various school officials who had investigated one or more of the incidents. The conference lasted approximately 2 hours and plaintiff and his parents had the opportunity to and did explain their positions regarding the incidents. The principal determined that suspension for the November 5 fight alone was not warranted and sustained plaintiff's appeal on that individual incident, but determined that the plaintiff should be suspended for the cumulative effect of all four fights, and particularly the fight of November 6, after having been warned earlier on the same day. He sent a letter to plaintiff's parents advising them that he had determined to suspend plaintiff from school for 3 days for being involved in physical fighting with students on four different occasions, and that the suspension spoke to "an accumulative situation."

Plaintiff's parents appealed the principal's deci-

sion to the superintendent of schools, who held a hearing on November 24, 1980. The plaintiff and his parents, other boys and their parents, the principal and assistant principals, counsel for the superintendent of schools, and counsel for the plaintiff were all present. The school officials presented their case and the plaintiff and his parents were given an opportunity to present their side of the case. After hearing, the superintendent denied the appeal and ordered that plaintiff's suspension would run from December 2 through December 4, 1980.

Thereafter, plaintiff filed this action in the District Court and temporary injunction was allowed on December 1, 1980. On January 23, 1981, after trial, the District Court specifically found that the plaintiff was accorded due process of law in the hearings held by the school district; that although the incidents were provoked, the plaintiff could have easily avoided them and was not forced to participate; and that the incidents were more in the nature of retaliation than in self-defense. The court dissolved the previous temporary injunction, and denied the petition for permanent injunction. This appeal followed.

The plaintiff contends that he was not afforded due process of law in the series of hearings held by the school district officials. Essentially, his claim is that he only received advance notice that he was to be suspended for the November 5, 1980, incident, but did not know in advance that the other incidents were also to be considered. We disagree.

By statute a school principal may deny any student the right to attend school for a period of up to 5 school days for any violation of rules and standards of behavior within the limitations and subject to the procedures of the appropriate statutes. See Neb. Rev. Stat. §§ 79-4,178 and 79-4,176 (Reissue 1976). Those statutes specify the procedures to be followed for establishing and promulgating rules and stand-

ards of student conduct and the procedures to be followed in suspending students for violation of such rules. The statutory procedures embody all due process requirements set out in *Goss v. Lopez,* 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). See, also, *Braesch v. DePasquale,* 200 Neb. 726, 265 N.W.2d 842 (1978).

In connection with a suspension of a student from school of up to 5 school days, statutory due process requires that the student be given oral or written notice of the charges against him, an explanation of the evidence the authorities have, and an opportunity to present his version of the facts. All of those things were done in the present case.

In the case now before us, it is not disputed that there was a specific rule of conduct prohibiting fighting, hitting, striking, kicking, or in any other way harming another student, and that the rules had been properly promulgated and distributed to students and their parents. The plaintiff and each of his parents had actual notice of the rule in advance and the plaintiff engaged in fighting in violation of the rule on four separate occasions.

The plaintiff's position is simply that the violation of the rule was justified either because it was in response to taunting or provocation by other students or was a form of self-defense. There can be no doubt that the plaintiff and his parents had notice of the date, time, and place of each violation involved and that the plaintiff and his parents were given an opportunity to explain their version of the facts, particularly with respect to the last two incidents.

All of the procedural due process requirements of the relevant statutes were followed and the plaintiff and his parents were also given an appeal hearing before the superintendent of schools, at which counsel was present. To contend, as the plaintiff does, that plaintiff was denied due process rights under the facts and circumstances of this case is utterly

frivolous. A 3-day suspension from junior high school can hardly be said to constitute such irreparable harm as to justify judicial interference with lawful and proper school disciplinary procedures.

AFFIRMED.

WHITE, J., not participating.